We'll hear argument next in Case 09-846, United States v. Tohono O'odham Nation. Mr. Yang. Mr. Chief Justice, and may it please the Court. This Court in Keene held that Section 1500 of Title 28 deprives the court of Federal claims of jurisdiction when the plaintiff has a pending suit in another court based on substantially the same operative facts, and left open the question whether some overlap in the relief requested is also necessary to trigger that bar. The Federal Circuit erred in holding that Section 1500 applies when both suits — only when both suits seek the same relief, and that the critical distinction in this regard is whether the particular relief in the plaintiff's plea for relief is deemed legal or equitable. Section 1500's text broadly bars CFC jurisdiction when, under any suit that the plaintiff has pending in any other court, the plaintiff is a suit for the CFC claim or is merely a suit in respect to that claim. In other words, another suit for a different but a related claim will trigger Section 1500. That provision was intended to protect the government from simultaneous duplicative suits against the United States and its agents by forcing plaintiffs to elect between those related suits. Ginsburg. But you recognize that sequential suits could be brought, so that if the case in the district court went to final judgment, then it would be okay to go to the Court of Federal Claims. That is correct. In some — and perhaps in a good number of cases, it's possible to, if you're a Federal Claims case or you're a district court case, first. But you don't have control over how long the district court case is going to take, and there's no mechanism to stop the running of the statute of limitations. Well, I think there is some control that you can exercise over how promptly the suit proceeds, particularly if we're talking about suits against the government. Many suits proceed on an administrative record and go directly to summary judgment. That can be done in a relatively prompt manner. But even if not, the Congress that enacted Section 1500 in 1868 knew that essentially what it was doing in many, many cases would prevent a second suit from going forward. That's because the Congress was concerned with the Cotton claimants. The Cotton claimants had authorization to bring suit in the court of claims, but there was a 2-year statute of limitations. That statute ran from the end of the Civil War. And this Court, in a case called U.S. v. Anderson, it's 76 U.S., and the relevant pages are 70 to 71, made clear that the end of the Civil War, for the purposes of that statute, was August in 1866. Congress enacted Section 1500 in June of 1868. There was a 2-month window, if that, to bring suit, and Congress recognized or would have recognized that if you filed suit or were forced to elect at that point, that would be the end of the game. There was also another statutory provision that Congress enacted during the Civil War that put a 2-year statute of limitations on suits against officers. That was discussed in this Court's decision, Mitchell v. Clark, 110 U.S., 633, pages 641 and 642. So given the time at which Congress is enacting Section 1500, it knew it was putting plaintiffs to a very hard choice. You had to elect between the Court of Federal Claims remedy and between a remedy in another court against an officer. That remedy would likely be the end of the game. And Congress did that in a very particular way. It did it in a targeted statute that limited the authority of the court that had its hands on the purse strings of the Federal government, and that performed the very function that Congress, just a few years earlier, had itself exercised through the enactment of private bills through its appropriations power. So Section 1500 ultimately states, in essence, that if you're going to bring suit in this specialized court where Congress has vested the Court of Claims with the very special power of distributing money from the Federal FISC, that you could only bring one suit arising from the same operative facts in order to be in that court. Sotomayor, but that's you just. Sotomayor, why isn't my reading of it quite very simple, which is Congress was concerned with ensuring that a claimant didn't get double recovered in two different suits? Isn't that, it's simple, you know? You've got people suing in different jurisdictions over getting a same pot of money or something close to it. Why isn't our view of 1500 just simply, you can't have two suits that are seeking the same pot? Well, it wasn't the same pot of money. The Abandoned Property Collection Act, we'll call it APCA, provided for a special statutory trust remedy. That remedy was for the net proceeds of anything, any auction sales that might have resulted from the cotton. If the cotton was lost, it was damaged, it was destroyed. If the proceeds were paid but ultimately didn't make their way into the FISC, you got nothing or you got a substantially reduced fund. If you sued in tort, you might be able to sue, as we explained in our reply brief, under certain doctrines that would give you the property and specie, or you could seek monetary relief. These are quite different things. And even in its very own case, it's not the same thing. Ginsburg But you couldn't get both. I mean, that's, I think, Justice Sotomayor's point about the duplication is not, even if you can say, yes, it's a different mode of relief, but you couldn't get, I mean, suppose we didn't have $1,500 and you prevailed in your suit under APCA, whatever you call the statute. You could not then turn around and sue the government official because you have the single claim you've been compensated. It's not here. It's quite different. I mean, one suit is not precluded by the other. You recognize that by saying you could bring the claims court suit after the district court suit, but that's not so in the Cotton case. You may in certain instances, but particularly in the Cotton cases, Congress knew that what it was doing was forcing one path, and only one path. It wasn't about duplicative recovery. You had to choose, and you're not going to have time to bring another suit. And Congress would have known that when it enacted the section 1500's predecessor two months before the statute ran in APCA, and perhaps after the statute ran for bringing a tort suit against officials under the cases, the statute that this Court construed in Mitchell. So it wasn't simply that duplicative relief was at issue. Congress is actually forcing you to make a choice in cases in where the types of relief were quite different. And the type of relief, for instance, that you would get in a suit against an agent of the United States, what you get out of that suit is not a pot of money. The Court does not say at the end of the case, here you go, you asked for $1,000, here it is. The Court enters an order. It enters judgment. It says, defendant, perhaps Tony Yang, officer of the government, you pay $100 million, $50 million. It doesn't mean much to the plaintiff if they get asked Tony Yang as an individual. This is very different relief than a money judgment against the United States. It's not the same relief. And in fact, we don't normally think of a claim as embodying a particular type of relief, which is the submission of the triumph. Ginsburg. But I'm not sure I understand your answer to my question. Assuming you had a recovery under the for the confiscated cotton, under the one route you had a recovery, you could not sue again under the other route without leaving aside $1,500 because the claim would be precluded. That might have been true in one direction, but maybe not in the other, and let me explain. The — I'm not sure that there was an instance of this happening because of Section 1500's existence. But if you had, for instance, obtained damages against an individual agent in a suit and you still could have brought suit within the Abandoned Property Collection Act, the Abandoned Collection Property Act provided a statutory trust for the owner of the cotton. It's not at all clear that that would have been precluded. There may well have been, but for the statute of limitations problem, the ability to get a double recovery. But nevertheless, I mean, our submission ultimately turns on the understanding of the text of the statute, which is quite broad. The text not only precludes triggers. Roberts Well, but it's not as broad as your test arising out of the same operative facts. It doesn't say that. It says any claim for in respect to which. And it seems to me that the facts of this case draw that precise distinction. When you're asking for an accounting, you're not raising any claims about people doing anything bad at all. You're just saying let me know what I've got. And then when you bring a claim for money because of mismanagement of the trust, that's quite different. Yang That's true in some cases of an accounting. It's not true on these complaints. The complaints here are they have a sense of a kitchen sink type of a pursuit of these claims against the United States. The district court case is not simply seeking an accounting of old money as the tribe submits. It actually alleges a whole slew of breaches, including the breach to to of failing to invest money properly, failing to put it to its highest use. It says the true balances would be far greater, but for these breaches, it specifically seeks a definition. Roberts Is that to assert the basis about why an accounting should be required? Yang No, because back with the counts, these are back on pages 90 and 91A of the Petition Appendix. The tribe not only seeks an accounting, but it also seeks an order to comply with all other fiduciary duties determined by the court. This is paragraph 42. It goes on to say that the tribe is not only entitled to object and essentially challenge the accounting, but it's entitled to any other equitable relief that might be appropriate in light of the Court's decision in the case. So the tribe is in no way trying in the district court simply to seek an accounting. Just like in the court of Federal claims, it's not simply looking to what they claim to be new money. The specific allegations in the CFC complaint say that there has been no money for the new accounting for the revenue collected. Roberts Well, what is the — maybe I don't know enough about what an accounting is, but why would it be other equitable relief to which they are entitled if they simply say we want to know what we've got? Yang The tribe— Roberts And then it may be a basis for further claim that if that's all we've got, where did the rest of it go? And that might be the court of claims action, but it does strike me that they're different claims, claims for different relief. Yang It should be that way if there were a narrowly tailored APA-type-like suit in district court, but that's not this. The tribe's complaints both invoke, for instance, the Cobell litigation, which has been going on in D.C. for quite some time, and are modeled on the same types of broad claims that are at issue at Cobell. This is not a simple case where there's agency action withheld and a court says, agency, you had X duty, do it. This is a situation where the tribe is seeking to impose itself on age-old decisions that have been made a long time ago and to seek to revisit them and at the end of the day restate their accounts to reflect what they think should be in the trust fund. This parallels in both the Federal Circuit — the court of Federal claims and the district court suit. There's substantial overlap in the operative facts. As the two judges, the only two judges to have addressed this. Roberts Is an accounting what should have been in the trust fund or what actually is? You say give me an accounting of the trust fund. Does the officer go back and just add up the bank accounts and value the land and all that, or does he go back and say, well, this should be there, but it's not? Yang The — there's a difference between the parties, and I don't think it's been fully fleshed out here about what an accounting is. The statute at issue that the tribe invokes for the accounting, in our view, provides a prospective obligation for the government to provide quarterly statements of what's coming in and out of the account going forward. Roberts Going forward. Yang Going forward, not going back. And only with respect to monies that were deposited or invested under a specific statutory authority, that involves deposits that were made in banks. So in our view, you know, our view and the tribe's view, I think, are quite different in terms of what's at issue in the district court case. And unfortunately, that's not the case that's before you here. But what we're trying to do is say whether or not there's substantial overlap between the two. And — Roberts Are you at cross-purposes on those two issues? When it comes to what an accounting is, you want to say, oh, that's just going forward. When it comes to this 1500 question, you want to say they're the same as the money damages which go backward. Yang No, I don't think we're at cross-purposes. What we're saying is what the complaint alleges. We don't control how the tribe seeks to assert rights. We think that the complaint may be overbroad, but that's not the correct question. I mean, this Court in Keene, for instance, addressed suits which had been dismissed because they were improperly brought in district court. And those suits in district court were sufficient to trigger Section 1500's jurisdictional bar simply because they were asserting claims that overlapped with the claims that were issued in the CFC. Kennedy Do you read claim in Section 1500 the same way that it should be, or do you think we should read it the same way in 1500 and 12b-6, whether it's a failure? Yang I think so. I mean, Kennedy Whether or not you've stated a claim upon which relief can be granted. Yang Right. Which draws a distinction between the claim and the relief, right? If relief were the particular type of relief as the tribe asserts, the rule would simply say failure to state a claim, because you would have failed to state a certain element, a necessary element of it. But instead it says failure to state a claim upon which relief can be granted. And I think that keys into the other important provision of rule, the civil rules for this purpose, which is Rule 54c, which makes clear that the relief that might be initially stated in a complaint is not the relief that's at issue in the case. The relief that comes in at issue in a case is the relief that the – that is proven, whether it be at summary judgment or at trial. And even if, for instance, you ask for a dollar in damages in your complaint, it may well be that at trial you establish an entitlement to injunctive relief or damages granted. Ginsburg. So not so here, because the way Congress has set up the authority of each court, you could never get 54 – what is it, 54c or 54c? 54c, the relief to which you are entitled, the only relief to which you are entitled in the one court, the court of claims, is compensatory damages. So there isn't a question of some other form of relief. You have to go to another form to get different relief. Well, I – yes and no. The district court complaint, for instance, and again, we contest this, but they seek a restatement of their accounts. They seek remedies such as equitable disgorgement and the like. These are monetary remedies that go, again, to the same types of issues, same type of issues. Scalia. I also thought that the court of claims could give a – All of these claims could be brought in the court of claims. They can give injunctive relief where that's necessary. That's correct. But if you have a claim, for instance, taking the old money, new money framework, which we don't think is borne out by the complaints, but even if it were correct, if they were seeking so-called old money in district court, that is, money that should have been there but was improperly allocated and therefore didn't show up in their account, they could also bring a claim under the Indian Tucker Act, claiming that there was some breach of duty under a statute of regulation, clear and specific – this is a Navajo Nation-type question – and you could get an accounting through in order to determine the proper amount that should be there. So this is a way – the problem that we have here, particularly in this case, is that particularly in these cases where there's an allegation of 100 years of trust duties going back, and simultaneously litigating these cases in courts that might have different views on discovery obligations, different views of the law on various point cases. One of the cases that we cite in the appendix to the petition, the Action case, the CFC ordered discovery, for instance, that we have to conduct a review of 33,000 boxes of materials from the archives. Although we claim there's an APA case going on in district court, the plaintiffs are seeking discovery there. We're fighting it. But this type of duplicative litigation and the burden on the government is precisely what Congress, in 1868, said, if you're going to bring to the court a claim for money of some kind, and some other kind of relief that they seek where they couldn't get it all in the court of claims. A declaratory judgment, for instance. Some of these cases arise. Breyer's declaratory judgment. Is there anything else? Well, I mean, you wouldn't be able to get injunctive relief. No injunctive relief. Not normally in the court of claims there are exceptions. No matter what. Okay. Well, then they have a problem, because they might want some money and they want an injunction. So what are they supposed to do? There's no question that section 1500 may put a plaintiff at a difficult choice. And you can't get a choice that's existed since 1868. To test that choice, I mean, and it's pretty stark, in the Casment case where Congress said back pay is for the claims court, reinstatement for the district court. But your position is that under your reading of Casment, let's forget about Congress's amendment of it, under your reading of the statute, the Casment decision was wrong and the plaintiff had to choose either back pay or reinstatement. There was no way to get both. That's correct. And I think that was this Court's suggestion at the end of Keene, when the Court recognized that because there are complicated jurisdictional regimes that apply when you sue the government, the Court explained there may well be situations where this precludes a plaintiff from seeking all the relief that you would otherwise be able to get if you could bring suits separately. And the Court in Keene said, look, if there is apparent hardship, following its decision in Corona-Cole, which is 1924, if there is a hardship in the statute, it is a question that must be directed to Congress, because Congress is the one that set this up, this jurisdictional limit. And the jurisdictional limit that existed in 1868, remember, was a very difficult  You could exploit it. Breyer, but your basic point is this. You're just saying it's too bad, go to Congress, but you don't deny the basic point, which is that an Indian tribe may think the Bureau of Indian Affairs has really mismanaged everything. And what they would like is some money, and also they want an injunction so they won't do it again. And now your view is it's true, there's no way they can get that because they have to go to two different courts, and really, in your view, they can't go to two different courts, period. So the hardship is definite, it's just you're saying that's what Congress wanted. The hardship may be there. The hardship is less now than it was in 1868 because of the blank date. Why isn't it just as bad as what I just said? Because you might be able to bring, for instance, an APA suit that completes before the 6-year statute of limitations ends. And frankly, we don't think that that's an unusual thing for an APA action to be brought promptly, even with an appeal. APA actions, again, if it's limited to the administrative record, as they should, you can go straight to a summary judgment like receipt of a case. Scalia, you have to extend a case that I didn't agree with when it came out. You have to extend Bowen in order to achieve that. Does the government want to extend Bowen? No, no. I'm not suggesting that that was a proper suit. But what you could do is you could pursue it and it could complete and still be — there would still be time to bring a suit in the court of Federal law. You could complete it to a denial of recovery. Perhaps. That's right. We think these suits. I don't think that's any comfort to the Indian tribe, do you? Well, but that's precisely what they're seeking to do here. We just disagree whether that relief is available in district court. And the question here is whether you can simultaneously pursue it. Let me be clear. These cases, in our view, should almost all be brought normally in the court of Federal claims. These cases are seeking money for past actions, and that's precisely what the court of Federal claims should address. However, a number of plaintiffs like to try their hand at more than one court, and they bring simultaneous suits just as Tucker. The Cotton claimants did in the 1860s. Congress provided for a general statute, but it's very broadly worded. It applies to any claim for and respect to which any suit or process is pending in any other court against the U.S. or any person acting or professing to act as its agent. It's a very broad statute. It's not — I mean, you're putting a pejorative spin on what they're doing, saying, you know, many plaintiffs like to take a chance in, you know, more than one court, but your response to Justice Breyer suggests that, you know, that's a tough choice if you have to choose between injunctive relief or damages. That's not them trying to, you know, get the same — take two bites at the apple. In some cases, it's a tough choice. Kasman would have been a very difficult choice, but as, you know, this Court suggested in Keene, the question goes to Congress, and when Congress addressed the question, it decided relief of that sort should be brought all in the court of claims. And — but in this case, this is not a case where we think particular hardship would be had, because the tribe could pursue its claims in the court of Federal claims and probably should be doing that if it simply could. Sotomayor, So why isn't our rule simply what's so wrong with a rule that says if you can bring it in the court of claims, you have to, but if there's relief that you can't have two lawsuits, what's so irrational about that? Well, that doesn't square with the history of what Congress was trying to target. The relief that was available in the court of claims in the 1860s under the Abandoned Property Collection Act was a very limited. We've already gone through that, because most of those claims would have had some element of double recovery that might have precluded a second action. The point that I raised was if there's a chance of potential double recovery, you can't bring them. What's wrong with that? I don't think it squares with the text of the statute, which is broader than it doesn't provide for claim, it doesn't provide for, I'm sorry, relief. It doesn't speak to double recovery. If Congress was intending to target that specific problem, it could have done so in a much more direct manner. Mr. Chief Justice, I would like to reserve that for my time. Thank you, Mr. Yang. Ms. Spinelli. Mr. Chief Justice, and may it please the Court, two suits are for or in respect to the same claim under Section 1500 only if they stem from the same operative facts and seek duplicative relief. And in response to the government's argument, I'd like to explain why that's the best reading of Section 1500's text, as well as the only reading that harmonizes Section 1500 with the overall jurisdictional and remedial scheme. Congress has made a broad range of remedies available to plaintiffs wronged by the government, and it's directed plaintiffs to seek certain remedies only in the court of Federal claims, and certain remedies only in the district court. The government's reading of Section 1500 assumes that Congress intended to penalize plaintiffs for following that direction by barring them from the only forum where they can obtain money damages. But nothing in the statute's text or history suggests that Congress intended to create such a nonsensical scheme. Scalia. Well, your argument assumes that there is available in the district courts injunctive relief under the Administrative Procedure Act. And that is far from clear, even after Bowen. It's far from clear. Justice Scalia. That you had any business being in the district court anyway. And so in a way we're resolving a very strange question. That is, if, as is not clear, you have a right to sue in the district courts for an injunction, can that suit proceed because of 1500 when there is a suit pending in the court of claims? And, you know, that's sort of an abstract question. Justice Scalia, it is disputed whether or not the district court has jurisdiction to entertain the nation's claims there. The government has moved to dismiss on that ground. That motion is pending. We don't believe that the district court's jurisdiction over the claims raised in the district court is a question that this court needs to face. Rather, the question here is whether the court of Federal claims has jurisdiction over the claims brought in the CFC. And that turns not on whether the district court has jurisdiction, but on whether duplicative relief is sought in both suits. Breyer, the main thrust that I was raising is does this really get the tribe into trouble? They have to forego one kind of relief for another. So I said what about injunctive relief? That's what he's thought of. But Justice Scalia raises the point, well, they're not going to be entitled to injunctive relief anyway, because the APA doesn't provide it, if I'm saying it correctly. So you've given up the null set, not giving up the null set. No, not at all, Justice Breyer. I mean, first of all, we would contest that we're not entitled to the relief that the nation sought in the district court. We believe that the nation is entitled to that relief. Breyer, but it could get it in the court in the claim. Could it get that kind of relief in the court of claims? Correct. Yes, it could. All right. No, no, no. You're right that it could not. It could not. The relief that's being sought in the district court is primarily an accounting. An accounting is inherently an equitable remedy, a remedy that under trust law the beneficiary, to provide the beneficiary with all information necessary for him to protect his rights. But isn't it well established that part of the jurisdiction of the equity court when it requires an accounting is to give damages for breach of the breach of the trustee's duty? I mean, that's a hornbook. That may well be the case, Justice Kennedy, in common law trust suits. That wasn't requested. No, I'm talking about historically in equity. No, historically in equity, the trustee who breaches the trustee's duty in the equity court is required to give damages. You're correct that normally, that in the past all suits were. It's not common law. It's equity. It's old law. Correct. It affects equity. You're correct that in the days of the divided bench, suits for breach of trust were brought in equity. I don't think we need to parse that finely here, because the question here is whether or not the tribe has sought duplicative relief in both courts. Here you're unrealistic. You don't want an accounting for the sake of having an accounting so that you can put the accounting in your desk. Oh, look it, they've stole $1,000,000,000 from us. You want to get the $1,000,000,000. Both of these suits are directed at the same object, and it is fanciful to think that there's this separate suit for an accounting. The object of that suit is the same thing as the object of the suit in the court of claims. With respect, Justice Scalia, that's not the case. The accounting has enormous benefit entirely apart from any monetary relief that it might ultimately lead to. The Nation, as well as other tribes who have brought these kinds of suits, lack basic information about what they own, what the meets and bounds of their lands are, what leases have been granted, how long they last, what easements and rights of way have been granted over their land, what the status is of their mineral rights and timber rights. All of this is information that the tribe needs and that Congress recognized in the Indian Trust Fund Management Reform Act that the tribe needs in order to exercise its Federally granted right to decide how its assets are best managed. And the longer that that accounting is delayed, the more the Nation is harmed by the inability to do that, the inability to decide whether certain funds should be withdrawn from trust held by the United States, the inability to decide whether it should bring claims against third parties. So there's real value to the accounting that's entirely separate from any monetary relief. And the accounting is not sought in the court of Federal claims. The court of Federal claims has long held that it lacks jurisdiction to grant that kind of pre-liability historical accounting. Although the Court of Federal Claims can't go there and say, look, I want an accounting, but you can say I want, I've been wronged over the century and I'd like to find out to what extent. And before you can figure that out, you actually have to have an accounting. Can't the Court of Federal Claims get an accounting in that context? The Court of Federal Claims can order something called an accounting in aid of judgment. Despite the similar terminology, they're not at all the same. An accounting of the type that's being sought in a district court is a remedy by itself. It's a remedy that the beneficiary is entitled to. Once it's received or denied, that's a final order that can be appealed. Roberts. It's a remedy, but is it terribly different from what the accounting the Court of Federal Claims would order to figure out how much the district would owe? It is, because it requires the trustee to provide all information about the trust that might be relevant to the beneficiary. And it does so without requiring the beneficiary to prove any mismanagement. By contrast, Were those accountings available before the Administrative Procedure Act was passed? I mean, is the jurisdictional basis for that, the waiver of sovereign immunity that allows you to demand an accounting from the United States, is that just the APA? The waiver of sovereign immunity that's being asserted in the district court is the APA. That's correct. What about this? So you didn't have a right to that before the APA was passed? In the district court, no. Well, neither in the district court nor in the court of claims. So this is not an unthinkable situation, is it? It's a little bit more complicated. It was thought about for a century anyway. It's a little bit more complicated than that, because prior to the Court of Federal Accounting, certain claims for an accounting could have been brought before the Indian Claims Commission, but, I mean, that's going a little far afield. At any rate, Congress has now recognized, specifically by statute, that this is something that tribes need, and that's the right that the nation is seeking to enforce in the district court action. Why do you say Congress has specifically recognized it by statute? Are you referring to the APA? No. I'm referring to the 1994 Indian Trust Fund Management Reform Act, which specifically required the Department of the Interior to provide tribal beneficiaries with certain statements, certain accountings regarding their own. But did not provide for a lawsuit against the government. They did not expressly do so, no. But in the CFC, don't you get or aren't you asking for a compensation for losses and injuries from the commingling or the misappropriation of assets? No, Justice Kennedy. In the Court of Federal Claims, a close reading of the complaint will show the nation is requesting four specific kinds of relief. First, it's asking for damages from the United States' failure to lease its mineral rights for fair market value. That's count one. Count two is seeking damages from the United States' failure to obtain fair market value for leases of its land. Count three is seeking damages from the United States' failure to invest judgment funds in a timely way and to obtain the maximum interest rate. And count four asserts a similar claim for damages with respect to the trust funds. But your brief makes the – seems to make the point that that's all just interest on capital. It's not for the loss of capital. But even as you describe it, it sounds to me that you get damages for loss of capital plus interest. It's not just interest. You're correct. I mean, maybe if I give an example, this will make things a little bit clearer. Say that the government sold a stand of timber belonging to the nation for $20, even though the stand of timber was worth $40. It then deposited into the trust account $10. The suit in the district court seeks an accounting and a restatement of the accounts and to the extent appropriate and available, equitable restitution of the $10 that was missing from the account. The suit in the CFC seeks to recover the $20 that the United States should have earned had it acted as a prudent fiduciary when it was selling the stand of timber. And the nation is entitled to both sums of money, but they are different. And because the money sought in the two courts is different, the relief is not duplicative. Kennedy, my problem is that I read the CFC complaint as including both. I'll take a look at it. And I intruded on Justice Breyer's question. Breyer, what I'm trying to work out still in my mind is if you say, look, Indian tribe, you have to go to the court of claims, period, period. You can't go to these other courts, I mean, unless you're going to give up the court of claims. Is the Indian tribe going to really lose something that it needs? Yes. And I know you think yes, but I realize that. And what I want to ask you about is in section 2 of 1491, there is a sentence which says about the court of claims, in any case, including the 1505 Tucker Act, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just. Now, that seems awfully broad, so I'm thinking now, if they want money, they can get the money from the court of claims. If they want something like an injunction, you could ask the court of claims, tell the executive branch to behave the way we think they have to under the law, and there is your authority. It's just quoting. Now, what's the other response? Well, you're exactly right about what 1491a2 provides, but it also provides that any such relief can be ordered only as an incident of and collateral to a judgment on a claim of which the court of federal claims underlies. Well, you want money. That causes the problem. If you don't want any money, you don't have a problem, because forget about that. And notwithstanding this language, the court of claims has continued to hold that it lacks jurisdiction to grant an equitable pre-liability accounting. All that it can do is, after liability for certain acts of mismanagement has been proven, calculate damages for those specific acts of mismanagement. Now, I'm not sure I understand. You could not bring in the court of claims the old money claims, and why? That the government mismanaged? Well, two things, Justice Sotomayor. We believe that the nation could not bring the old money claims in the court of federal claims because it has held repeatedly that it lacks jurisdiction to grant an equitable accounting. However, I don't believe the answer to that question matters, because the issue here is not. Sotomayor, it does, because why couldn't you simply have said they owe us that original extra $10 and we want it? What the what? Dividing, well, it is clear that the accounting sought in the district court couldn't have been obtained in the court of claims. And it made sense to seek the old money, as the court of appeals called it, in conjunction with the accounting, because the accounting is what should reveal what is missing from the account. And that's the reason, and not for any manipulative or forum shopping purpose, that the nation split its complaint the way it did. Now, to be sure, there is some fuzziness about the jurisdictional line between the court of Federal claims and the district court. There's no doubt about that. The nation did its best to negotiate that and filed its complaints in good faith. We believe that that question doesn't need to be addressed by this Court, because the only question Section 1500 asks is whether the two suits are for or in violation of the same claim, by which we think it means, are they for or in respect to the same demand for relief. Here, the government says the statute is simple. It says you can't have two suits simultaneously, or you can't when the CFC suit is the second one. And Mr. Yang told me that, yes, the government thinks that in the Cashman case, there was a choice. You can sue for reinstatement in the district court. You can sue for back pay in the claims court, but you cannot get both. And when Congress realized that that's what was happening, Congress did not adopt a two state – didn't bless it, the two state, two court solution. Congress said there will be one lawsuit. It will all be in the claims court, and they can grant both the back pay and the reinstatement. So the two suit approach was rejected, I guess, in Congress's response to Cashman. With respect, Justice Ginsburg, I would disagree. I think that action by Congress in the 1972 Remand Act strongly supports the conclusion that Congress has implicitly acquiesced in this construction of Section 1500. Congress – you're right. Congress decided not to say go ahead with your two suits in two different courts. It thought that was too burdensome for the plaintiff. Rather, it amended the Tucker Act to permit the plaintiff to pursue both remedies in the court of Federal claims. But that shows that Congress was well aware of the Cashman holding, and it did not make any change to the statute to cast the holding into doubt that where two remedies are available in two different courts, one can pursue them by bringing simultaneous suits in the two different courts. All that it did is make it easier for plaintiffs in that specific situation to get full relief. Beyond that, in 1982 you had to bring them both in the court of claims, no? You didn't still have the option of bringing two different suits, did you? No. I think after the amendment. You had to go to the court of claims. Yes. I mean, otherwise that would raise a claim-splitting problem. If they were just making it easier, they would have said, you know, you can do either one. They weren't. Well, I mean, clearly the easier path is to have one suit. I don't think any plaintiff wants to be forced to bring two suits to obtain two different remedies, both of which it needs, at double the expense and, you know, double the anxiety. But I think what's significant about the 1972 action is that Congress did absolutely nothing to suggest that it disagreed with the Casman holding. And the same is true in 1982, when Congress completely revamped the entire jurisdictional scheme, changed the jurisdiction of the claims court very much, and yet left Section 1500 entirely untouched. And that makes sense. I mean, just to turn to the text for a minute, the key word, as I think this Court said in Keene, is the word claim. Claim can mean a lot of different things. It can sometimes mean the set of operative facts from which a right to relief arises, which I believe is at least implicitly what the government is saying. It can also mean a demand for relief. For instance, in this Court's cases regarding Article III standing, it's routinely said a plaintiff has to establish standing separately for each claim, which means for each form of relief sought. The reason that is the correct reading of Section 1500 is because of the nature of the jurisdictional scheme. The court of Federal claims has always been a court of limited jurisdiction. It can only grant certain remedies, primarily money damages. And the word claim in the Tucker Act and its predecessors from the very beginning prior to the enactment of Section 1500 has been read by this Court to mean a demand for relief. Ginsburg. That would be inconsistent with the definition of claim in the Federal rules, I think. Yes, I think the definition of claim in the Federal rules, I think that's a different definition of claim. I think what we have here is a narrower definition that was first established in the 19th century through this Court's decisions construing the Tucker Act and its predecessors. Given that the word claim in the Tucker Act carries that narrow meaning, it certainly makes sense to construe the word claim in Section 1500 as having the same meaning. If you give it that narrow meaning, however, the government says you are contradicting what was the case with regard to the cotton suits. That's a That's a And in fact, some of them were asking for funds from this, money from this common fund, and others were seeking relief against the individuals who had taken the cotton or a replevin of the cotton. Those are different claims. As you define claim anyway. I don't think that is our definition of claim, but let me explain. We don't dispute that some cotton claimants, you know, brought writs of conversion or trespass. Some may have brought writs of replevin or detenue seeking the cotton itself back. The relevant fact is that a suit saying I want my hundred bales of cotton back and a suit saying I would like money to compensate me for the loss of my hundred bales of cotton seek duplicative relief. And But that's different from the word claim. I mean, if you are hanging the whole thing on the word claim, you gave me what seemed to me a very plausible alternate definition of claim. But your case does not follow that. Your case hinges on duplicative relief, which is something quite different. I don't know any definition of claim that is synonymous with duplicative relief. The word claim in section 1500 refers to claims over which the court of Federal claims must mean a suit for or in respect to a demand for relief that can be granted. The word claim has been read implicitly to incorporate the limitation on the kind of relief that can be granted. Therefore, in section 1500, a suit for or in respect to a claim in the court of Federal claims must mean a suit for or in respect to a demand for relief that the court of claims can grant. And where duplicative relief is being sought, that falls within the language of the statute. It falls within the overall jurisdictional scheme, which directs plaintiffs to bring suits for different relief in different courts, and it also coheres with the cotton claimants. The cotton claimants were seeking duplicative relief, and that's the concern that Congress aimed at. Congress was not faced in 1868 with a situation in which plaintiffs had been directed to seek different non-duplicative remedies, remedies that weren't substitutes for one another but complemented one another in two different courts. Breyer, I had the impression that sometimes they sued for some money out of a fund which would have been partial. And other times they sued for the value of the cotton. And other times they sued for the cotton itself, which in certain circumstances could have been worth a lot more. Maybe by the time of suit it went up. I mean, do we know it was always duplicative in those cotton suits? I believe we do know that it was always duplicative, notwithstanding the fact that the amount one might recover might differ. Well, then how if the amount differs, then what is supposed the cotton belonging to the Indian tribe? On the one hand, they want an accounting of money ever earned out of this cotton in the past. On the other hand, they want what the cotton is worth in the future on the New Orleans exchange. I mean, back to Justice Scalia's question. That is not duplicative. What's duplicative is a remedy that's either the same or a remedy that serves as a substitute for another remedy. And what this Court has said, though, is that even if it's not a completely full substitute, even if, say, the damages sought in one court are less than the damages sought in another, if they are duplicative relief for the same injury, they're barred by section 1500. And I think that's completely consistent with the holding in Keene. In Keene, the plaintiff was bringing multiple suits against the United States in different courts for duplicative relief, money in compensation for funds it had paid out to asbestos claimants. And notwithstanding the fact that it brought some of those suits on a contract theory and some of those suits on an equitable tort theory of indemnification, the statute barred those. But Keene was not faced with a situation in which plaintiffs were forced, as in Kasman, to proceed in two different courts to obtain different relief. And another particularly good example is an example of a regulatory taking suit in which if a plaintiff wants to challenge the legality of government regulation affecting his property, he needs to do that in the district court under the APA. And according to the government, he cannot bring a suit for just compensation in the court of Federal claims until that district court suit is completed and any appeal is completed and any cert petition is completed, by which time the 6-year statute of limitations on the just compensation claim may very well have expired. Kennedy, but in your case, let's assume the government prevails, you go to the CFC and you prevail on everything. You get all the findings in your favor and so forth. There's some relief that you don't get. I take it, unless I'm missing something, that you could then, after the CFC suit is finished, go to the district court and say now we want this added protection, this added relief.  And it's only laches bars you, and you're not barred by laches because you couldn't go sooner? There are a couple of reasons why that wouldn't work, Justice Kennedy. First of all, the nation needs the accounting now. I mean, it's as if in Kasman, Kasman had been told, well, you know, first get reinstated — I'm sorry, first get your back pay, then go and get reinstated. He needs his job back now, not later. The nation needs the accounting now, not later. In addition, if it were the case that the accounting uncovered additional mismanagement, the statute of limitations, the six-year statute of limitations might well expire while the district court suit for an accounting is pending. Those suits tend to last a very long time. Indeed, in the Indian Claims Commission, they've been known to last for up to 50 years. And it's — it would force the nation to run the risk of losing its right to damages. We don't believe that's what Congress had in mind. It doesn't harmonize Section 1500 with the remainder of the statutory scheme. It's not mandated by the history of the statute. And it simply doesn't make sense. Unless there are further questions, we ask that the judgment be affirmed. Roberts. Thank you, counsel. Mr. Yang, you have four minutes remaining. Thank you, Mr. Chief Justice. The Tribe is unable to identify a textual basis for its same relief defense in the Court of Federal Claims. If its definition of claim is as narrow and circumscribed as it defines, it wouldn't capture the Cotton claimants originally. Moreover, putting aside the definition of claim, the statute applies when there is a pending suit or process in another court that is not only for the claim, but in respect to the claim. That substantially broadens the statute. Two, there are two problems with the same relief test as a practical matter. In order to determine whether the same relief is being sought in the other court, which is the relevant question under their test, you have to ask what relief would be sought in district court. But Rule 54c makes clear that the relief which is available in district court is not specified by the complaint. It's whatever develops through the case. So you might not know until the very end whether duplicative relief is being sought. Secondly, if you're going to limit the relief that's available in the district court based on what the court of claims view is of the district court's jurisdiction to issue relief, you're inviting the court of Federal claims and the Federal circuit to be opining on the jurisdiction of the district court under the APA in very complicated cases which involve questions of Bowen, Utah wilderness. This is not the way that you would construe normally a jurisdictional statute. The specter of 50-year-old suits proceeding simultaneously in the court of Federal claims in district court certainly would have motivated the bit spoken to the Congress that enacted section 1500, its predecessor in 1868. Roberts, do you agree with your friend that there are differences between the accounting you can get in the district court and the accounting you can get in the court of Federal claims as a prelude to monetary damages? I'm not exactly sure the differences that they're pointing to. There are some differences in terms of the procedure. In one, it's a relief. The other, you'd have to show that there was some kind of a breach, and then you get a full kind of accounting to quantify damages and relate in aid of judgment. But at the end of the day, the example of losing $10, you collect 20, but only debit put 10 on the books, that is a claim which is cognizable in the court of Federal claims if they have a money-mandating statute of regulation. Scalia, They say then they don't even know who has hunting licenses and fishing  Well, that's what discovery is for. I mean, the discovery, the action case, for instance, 33,000 boxes of discovery we have to go through in terms of a discovery request in the court of Federal claims. This is done not, I mean, this is the way cases normally proceed. They do not proceed on dual tracks where the very premise of liability in the court of Federal claims is being litigated in district court, where they are seeking to challenge, you know, an accounting, and accounting normally would be, you know, here is an account of your assets, but they are seeking to challenge it. If you went back to equity, for instance, a trustee does, as an equitable matter, have a duty to account and request it. But the cost of the accounting is taken out of the trust corpus. That's not what's going on here. They are trying to seek to use the APA to force something which we don't think is authorized under statute as a secondary means of discovery for the same claims that are at issue in the court of Federal claims. That type of duplicative litigation and the burden on the Federal courts is precisely what section 1500 was intended to prevent against. And the absence of a textual basis for the same relief test that the court of Federal claims or Federal circuit adopted here, I think, is fatal to the case. Kennedy, but the accounting doesn't come out of the trust corpus if there is misfeasance. The trustee has to pay the damages for that. Yang, I can't speak to that, Justice Kennedy. That's possible. I just am not that versed in equity jurisprudence to be able to give you a definitive answer. Ginsburg, what about the Loveladies situation? In Loveladies, if I may answer, Loveladies involved a district court claim for a declaration that the action wasn't taking. A district court taking declaration, which was ultimately disposed of, but at the same time that Loveladies was seeking to assert a claim for just compensation in the court of Federal claims. Thank you, Mr. Yang. Thank you. Mr. Monelli, the case is submitted.